VESPER et ux. v. LAVENDER. †

(Court of Civil Appeals of Texas. San Antonio. June 12, 1912. On Motion for Rehearing, June 28, 1912.)

1. MUNICIPAL CORPORATIONS (§ · 706*) — STREETS — AUTOMOBILE ACCIDENT — DISCOVERED PERIL.

Where defendants saw plaintiff in the street in a situation of danger, and negligently failed to do what was necessary to avoid running their automobile against plaintiff, the court properly submitted the issue of discovered peril.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1515–1517; Dec. Dig. § 706.*]

2. APPEAL AND ERROR (§ 882*)—RIGHT TO ALLEGE ERROR—INVITED ERROR.

Where, in an action for injuries in an automobile accident, defendant requested a charge submitting the issue of discovered peril, she could not object on appeal that the evidence did not warrant the submission of such issue.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

3. TRIAL (§ 253*)—INSTRUCTIONS—IGNORING EVIDENCE.

Where, in an action for injuries in an automobile accident the evidence presented the issue of discovered peril, the court properly refused to charge that it was negligence on plaintiff's part not to have looked and listened before stepping from the sidewalk into the street for the approach of automobiles or other vehicles, and, if she. so acted and the collision was due to or contributed to by such failure, to find for defendant. .

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

4. TRIAL (§ 252*)—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

Where plaintiff was not struck by defendant's automobile as she stepped from the sidewalk, but while she was crossing the street, an instruction that it was her duty to look and listen before stepping from the sidewalk into the street, but, if she failed to do so and the collision was due to such failure or was contributed to thereby, she could not recover was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

5. MUNICIPAL CORPORATIONS (§ 705*)—USE OF STREETS.

A pedestrian is entitled to go on the street for the purpose of crossing, and while so doing has an equal right with those who use vehicles on the street; each being required to use the street with a reasonable regard for the safety and convenience of the other.

[Ed. Note.—For other cases, see. Municipal Corporations, Cent. Dig. §§ 1515–1517; Dec. Dig. § 705.*]

6. MUNICIPAL CORPORATIONS (§ 706*)—USE OF STREET—CROSSINGS—LOOK AND LISTEN.

A person crossing a public street is not negligent as a matter of law in attempting to cross without looking or listening for the approach of automobiles.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518; Dec. Dig. § 706.*]

7. APPEAL AND ERROR (§ 1060*)—ARGUMENT OF COUNSEL—PREJUDICE.

Where, in an action for injuries to a pedestrian by an automobile, the evidence amply supported the verdict, the amount of which was not complained of, a reference in the argument of plaintiff's counsel to defendant's failure to produce certain witnesses, whom it was claimed had witnessed the accident, not inflammatory, nor of a nature calculated to excite the passions of the jury, was not ground for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. § 1060.*]

8. TRIAL (§ 415*)—ARGUMENT OF COUNSEL—WAIVER OF ERROR.

Where plaintiff's counsel in argument referred to defendant's failure to produce certain alleged eyewitnesses, an objection to such argument was waived by defendant's counsel, asking to be allowed to answer the question and make an explanation as to why they were not produced, which he did.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 971; Dec. Dig. § 415.*]

9. NEGLIGENCE (§ 63*)—"ACCIDENT."

In an action for injuries in an automobile accident, an instruction that defendant was not liable if her automobile struck plaintiff by accident, and defining accident to be such an unexpected catastrophe as occurred without any one being to blame for it, viz., without any one being guilty of negligence in doing or permitting to be done or omitting to do the particular thing that caused the casualty, correctly defined accident.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 80, 81; Dec. Dig. § 63.*

For other definitions, see Words and Phrases, vol. 1, pp. 62–70; vol. 8, p. 7560.]

Appeal from District Court, Dallas County; J. C. Roberts, Judge.

Action by Mrs. E. Lavender against Fred W. A. Vesper and wife. Judgment for plaintiff, and defendants appeal. Affirmed.

Harry P. Lawther, of Dallas, for appellants. Wood & Wood, and Carden, Starling, Carden & Hemphill, all of Dallas, for appellee.

JAMES, C. J. The action was brought by Mrs. Lavender for damages alleged to have been sustained (1) by the failure of Mrs. Vesper, as she was driving an automobile, to give any alarm or signal of its approach to the street crossing where the accident occurred; (2) by by her failure to slacken the speed of the automobile to not more than three miles an hour at a street crossing; (3) by negligently operating the automobile at a greater speed than was reasonable, having regard to the traffic and use of the public street by others; (4) by negligently operating it in a careless and unskillful way; (5) by negligently failing to keep a proper outlook; (6) that. Mrs. Vesper was incompetent, inexperienced, and unskillful, and thereby unable to carefully manage and operate the automobile; and (7) by her failure to slow down and stop the machine and avoid injuring plaintiff after she discovered the latter's danger. Appellant answered by general de-

murrer and denial, and specially that she was proceeding in her automobile north on Ervay street, at a moderate speed, when suddenly and without any warning or notice plaintiff carelessly stepped from the sidewalk to the street directly in front of the machine in the middle of a block, and not at a street crossing; that plaintiff, as it appeared to Mrs. Vesper, had cleared the automobile, when she suddenly, carelessly, and negligently stopped and hesitated, and then quickly and negligently started back to the sidewalk, when the collision occurred.

A verdict was returned for plaintiff for $3,500.

### Conclusions of Fact.

As supporting the verdict returned in this case, we conclude that the testimony warranted the finding of the following facts: (1) That defendant was guilty of negligence in the manner of operating the car at the time and place and under the circumstances, which negligence caused plaintiff's injury; (2) that defendant saw plaintiff in a situation of danger, and negligently failed to do what was necessary and proper to avoid injuring her; and (3) that plaintiff was not guilty of contributory negligence under the circumstances.

[1] Under the assignments 1 to 4, it is contended that the testimony did not warrant submitting the issue of discovered peril. Our conclusions of fact dispose of this.

[2] The point could be disposed of by the fact that defendant requested a charge submitting the issue, which amounted to a representation to the court that such issue existed in the testimony, and an invitation to submit the issue. The record does not we think make it apparent that the request was made after the court had decided to submit such issue. Railway v. Matthews, 34 Tex. Civ. App. 302, 79 S. W. 71; Poindexter v. Kirby, 101 Tex. 322, 107 S. W. 42; Henry v. McCown, and cases there cited, 140 S. W. 1170.

Our conclusions of fact, as above stated, and what is stated under the foregoing assignments, dispose of the fifth assignment, which complains of the refusal of a peremptory instruction for the defendant. However, the propositions under this assignment appear to contend that the peremptory instruction should have been given because the evidence established that the collision happened by plaintiff unexpectedly getting in the way of the car, and in a position of danger under circumstances that did not allow defendant an opportunity to avoid injuring her. This cannot be said to be the effect of the evidence as a matter of law. Hence the reason which is urged in favor of the peremptory instruction fails.

[3] The sixth assignment complains of the refusal of a charge which would have told the jury that it was negligence on the part of plaintiff not to have looked and listened before stepping from the sidewalk into the street for the approach of automobiles or other vehicles, and, if she so acted and the collision was due to, or contributed to by, such failure, to find for defendant. The giving of such charge would have nullified the issue of discovered peril. The refused charge reads: "It was the duty of the plaintiff, Mrs. Lavender, before stepping from the sidewalk into the street, to look and listen for the approach in any direction of any vehicle that might be at that point in the use of the highway, and if you find from the evidence in this case that the said Mrs. Lavender failed to so look and listen, and that the collision with the automobile was due to such failure on her part, or that the collision was contributed to by such failure, if you find there was such failure, you will find for the defendants."

[4] Inasmuch as all the testimony shows that plaintiff was not struck as she stepped from the sidewalk, the applicability of the proposition is not apparent. It may be conceded that if a pedestrian steps suddenly from a sidewalk into the street directly in front of a vehicle—that is, into a plain and obvious danger—and is hurt, he ought not to recover.

[5] But a pedestrian has a right to go upon a street for the purpose of crossing. While so doing he has an equal right with those who use vehicles to the use of the street. Each is required to use the street with a reasonable regard for the safety and convenience of the other. While so using the street, a pedestrian's conduct with respect to due care in looking and listening may under certain circumstances be negligence of so pronounced a character that it could be declared negligence as a matter of law. The testimony here was not such as to warrant such a declaration.

[6] The rule on this subject has frequently been declared in this state in connection with the duty of a person to look and listen before crossing a railway track at public crossings, or street railway tracks on streets, and it has uniformly been held that the failure to do so is not negligence per se, but may, according to the existing circumstances, be found to be such by the jury. Traction Co. v. Hunt, 54 Tex. Civ. App. 415, 118 S. W. 827; Traction Co. v. Upson, 31 Tex. Civ. App. 50, 71 S. W. 568; Railway v. Tinon, 117 S. W. 936; Railway v. Butts, 132 S. W. 89. We may, in this connection, quote from Hennessy v. Taylor, 189 Mass. 583, 76 N. E. 224, 3 L. R. A. (N. S.) 345, 4 Ann. Cas. 396: "There is no imperative rule of law * * * generally requiring a pedestrian when lawfully using the public ways to be continually looking or listening to ascertain if auto cars are approaching, under the penalty that upon failure to do so, if he is injured, his negligence must be conclusively presumed. * * * This requirement has not been ap-

plied to travelers in their daily and common use of highways. * * * The usual rule of ordinary care does not impose upon them the burden of being constantly on the lookout to see if their path was free from dangerous defects, or in a state of apprehension of personal injury from other travelers."

[7] The seventh assignment complains of alleged improper argument on the part of appellee's counsel. The bill on this subject sets forth that it was shown that three persons, Judge Greer, Mrs. Whiteman, and Mrs. Burks, were on the corner near the scene of this collision in company with Mr. Bowles and Mr. Lake, who were used as witnesses by the defendant; that Mr. Carden, plaintiff's attorney, in the closing argument, said to the jury: "Why have the defendants in this case failed to produce before you these witnesses?" referring to said three persons. Whereupon defendants' counsel, Mr. Lawther, asked Mr. Carden if he might answer the question, and started to say that he had talked to them prior to the trial. Whereupon Mr. Carden said to Mr. Lawther that he had no objection to his stating anything based on the testimony, and, in reply, Mr. Lawther said he would tell it anyway, that he had talked to said parties, and they told him they knew nothing whatever about the accident. Then Carden resumed his argument, saying: "How about Judge Mathis, who the record, shows was put upon the stand by the defendant on the former trial?" Thereupon Lawther replied that as to Judge Mathis defendants did not put him on the stand because they wanted the plaintiff to put him on. Then Carden, resuming, said: "I know these questions hurt. I don't blame Mr. Lawther for trying to evade and explain them. What did Judge Mathis, Judge Greer, Mrs. Burks, and Mrs. Whiteman know about this accident? Don't you believe that, if what they knew about this case benefited the defendants, defendants would have put them on the stand?" Then Mr. Lawther arose, and stated to the court: "I will take a bill of exceptions to these remarks." And the court said: "Very well, you may have your bill." The court in giving the bill qualified same by adding that Mr. Lawther, who had addressed the jury just before Mr. Carden, had stated among other things that after the collision defendants advertised in the press for witnesses, and laid particular stress on said action on their part as being open and candid, and, further, that frankness and such action on their part and their publishing to the world asking that witnesses come forward and tell what they knew about the case showed that Mrs. Vesper was a fair and honorable witness and worthy of belief, and that her statements as a witness should be credited, and that no witness whose dealings were so open and frank could be guilty of an untruth, and the jury ought, therefore, to believe her testimony. In McLane v. Pas-

chal, 74 Tex. 27, 11 S. W. 839, where counsel in the closing argument made reference to former findings by juries in the same case, the court said: "Such course of argument was not proper, but, looking to the evidence in the case, there is no reason to believe that it influenced the jury, and this was evidently the opinion of the judge who tried the cause. * * * There is, as is conceded, ample evidence to support the verdict, and we do not feel authorized to set it aside on a mere conjecture that the jury may have been influenced by what ought not to have influenced any intelligent juror." See, also, Railway v. Irvine, 64 Tex. 535; G., H. & S. A. v. Croskell, 6 Tex. Civ. App. 160, 25 S. W. 490; Lewis v. Alexander, 31 S. W. 417. The testimony in the present case amply supports the verdict. The matter complained of was not inflammatory or of a nature calculated to excite the passions of the jury. There is nothing indicating that it had any improper effect, and the amount of the verdict is not complained of.

[8] The bill of exceptions shows that when Mr. Carden in his argument referred to said three persons, and said, "Why have the defendants in this case failed to produce these witnesses?" Mr. Lawther interposed no objection. On the contrary, he waived any objection to it by asking to be allowed to answer the question. And, when he answered it, Mr. Carden asked: "How about Judge Mathis, who the record shows was put upon the stand by the defendant on the former trial?" To this Mr. Lawther did not object, but was satisfied to answer the question. Up to this point Mr. Lawther clearly waived any right to complain of what had been said by Mr. Carden. The last statement in the argument of Mr. Carden is, therefore, all that can be taken as objected to when Mr. Lawther turned to the court and said: "I will take a bill of exceptions to these remarks." It seems to us that what was developed in the colloquy, without objection, was sufficient to convey to any ordinary mind that Mr. Carden meant to argue that the failure of defendants to place these persons on the stand was a circumstance against them. This being so, from the colloquy itself, and without any objection on the part of Mr. Lawther, but indulged and participated in by him, we think what was afterwards said by Mr. Carden, stating what he meant, would not warrant a reversal. However, it seems that the point made by appellants' proposition, and to that they should be confined, is as follows: "It is the right of every litigant, while acting in good faith, to object to any argument made to a jury on behalf of his adversary, which he regards as improper and prejudicial to his rights, and it is not proper for opposing counsel to argue to a jury, either directly or by implication, that such objection should be considered as evidence against the party

making it." The proposition is not applicable to the facts. The remarks complained of were not made with reference to any objection that Mr. Lawther had interposed, for no objection at all had been made. It has been held that counsel should not, in argument, deride or seek to use against his adversary the fact that the latter objected or sought a bill of exception to some proceeding, and upon these cases appellants based the proposition: Railway v. Roberts, 142 S. W. 46; Telegraph Co. v. Wingate, 6 Tex. Civ. App. 394, 25 S. W. 439; Waterworks Co. v. Harris, 3 Tex. Civ. App. 475, 23 S. W. 46; Rotan v. Maedgen, 24 Tex. Civ. App. 558, 59 S. W. 585.

[9] The final assignments complain of this charge: "You are further charged that, if you believe from the evidence that the plaintiff was struck by the defendants' automobile by accident, you will find for the defendants. By accident is meant such an unexpected catastrophe as occurs without any one being to blame for it: that is, without anybody being guilty of negligence in doing or permitting to be done or omitting to do the particular thing that caused such casualty." And of the refusal of the following charge: "One is not responsible in law for the result of an accident. An accident is an event happening unexpectedly and without the foresight or foreknowledge of a person. In this case if you believe from the evidence that the collision of the plaintiff with the automobile which Mrs. Vesper was driving was due to an accident which was unexpected and not foreseen by the said Mrs. Vesper, and which you find that an ordinary person in the exercise of ordinary care could not be held to have expected or foreseen, and which in the exercise of ordinary care the said Mrs. Vesper could not have been reasonably expected to have guarded against or prevented, you will find for the defendants." The proposition under these assignments is simply that the definition of accident was incorrectly given in the general charge and correctly given in the special charge. The definition given by the court was substantially correct. In Lumber Co. v. Denham, 85 Tex. 60, 19 S. W. 1013, this definition is stated: "An accident that cannot be reasonably anticipated by either of the parties, and that occurs without fault of the person charged with it, is not actionable." The charge was in the exact terms of a definition given by the Supreme Court of Missouri in Briscoe v. Railway Co., 222 Mo. 104, 120 S. W. 1162. On the other hand, the definition, "An accident is an event happening unexpectedly and without the foresight or foreknowledge of a person," is misleading, as it disregards the question of negligence.

Judgment affirmed.

### On Motion for Rehearing.

Appellants contend that they requested no charge on the issue of discovered peril.

The following charge was requested: "In this case the law imposed no greater duty upon Mrs. Vesper at the time and place of the accident to look out for the safety of Mrs. Lavender than it was imposed upon Mrs. Lavender to look out for her own safety. No duty rested upon the said Mrs. Vesper until it became apparent to her that there was danger of collision to the plaintiff. After it became apparent to the said Mrs. Vesper that there was danger of collision with the plaintiff, the duty was imposed upon her of exercising such care as an ordinarily prudent person would have made under the same circumstances to stop the car in the shortest time and space possible, and, if you find that she did so, you will find for the defendants." If this did not recognize the existence of the issue of discovered peril, we are at a loss to understand its effect. However, as stated in the opinion, the testimony presented the issue.

In view of the following testimony of the witness Felton, it is contended that the main opinion is inaccurate, in stating that all the testimony showed that plaintiff was not struck as she stepped from the sidewalk. Felton did testify: "The automobile was crossing a little north of the north track on Commerce street, I suppose 10 or 15 feet from Mrs. Lavender as she stepped from the sidewalk. * * * The situation, as I saw it, was just as Mrs. Lavender stepped off the sidewalk, the automobile was some 10 feet from her, and in no time almost the collision occurred. * * * Mrs. Lavender was crossing diagonally like she was trying to make a short cut. * * * There was nothing to obstruct her view of the automobile." This would make it appear that as she stepped from the sidewalk she stepped directly into a place of obvious danger. On the other hand, this situation is negatived by the testimony of several witnesses. Mrs. Vesper herself testified: "I first saw Mrs. Lavender in the street looking as if she had just taken a step or two from the curb, she was going diagonally across Ervay street, and, when I saw Mrs. Lavender in the street I blew a horn, and she looked up. When I gave the signal, she glanced up, and continued very rapidly until she seemed to be in the middle of the street. She was on the car track, and she suddenly stopped and wheeled right round and came back just as rapidly as she had gone forward. Wheeled right round and seemed to face me, faced my car, toward the car, and came directly to the car. I should say she took at least three or four steps after she retraced her movements. She just seemed to jump right over and back again three or four times rapidly, etc. * * * I did not use the emergency brake on this occasion. The automobile was a Buick, Model 10." The witness Fowler testified: "The car was probably 10 or 15 feet from the lady that was in the street, and she seemed to be undecided

as to whether to go on, or across or go back, but she turned, and had no more than turned before the automobile hit her. I judge the auto was making from seven to eight miles an hour. * * * Supposing I was driving up Ervay street between the car tracks and the curb, going along on low gear, the best mode to make the quickest stop, using such appliances as I have for stopping, the first thing to do is to put your foot on the brake, use the emergency brake, and the foot brake, too. Moving at a speed of six or seven miles an hour, I could stop in five feet by the use of the emergency and the foot brake—that grade at that place." The witness Bailey testified: "Mrs. Lavender started west across Ervay street and stopped as the automobile approached her, seemingly to let it pass, and at that time the automobile was turned or swung to the right, and then the automobile was swung to the left, and Mrs. Lavender stepped back, or backed up, and the automobile was then turned to the right and struck her with the left front wheel. * * * Assuming that it was a Buick machine operated by Mrs. Vesper and the machine running from six to ten miles an hour, I think it could easily be stopped in a distance of six feet. * * * The lady seemed to be confused and turned the machine right and left, and just before the collision the man appeared to make an attempt to assist her to handle the car. The lady had the wheel. From what I saw I think the cause of the collision was a failure to apply the brakes. I think what the man did probably steered the machine away from Mrs. Lavender, and made it strike her with one wheel, instead of the end of the machine. If he had not grabbed the wheel, I think the machine would have struck her squarely and run over her." The witness Castels testified: "As we came across Commerce street on Ervay, Mrs. Lavender stepped into the street in front of us. We blew the horn and slowed up going slow, and Mrs. Lavender walked into Ervay street onto the car tracks. We started to go around her to our right, to pass around between her and the curb, when she suddenly turned around and saw us, and apparently became frightened, and started back to the curb. When she got right in front of us, she seemed to lose control of herself, and couldn't go to the right or left, and then we collided with her."

The above is sufficient of the testimony to show that there was a phase of the case presented of Mrs. Lavender being run into by this automobile while in the act of crossing the street, and not immediately as she stepped from the sidewalk. The testimony develops also a case of discovered peril. The requested charge, if given, would have had the effect of declaring that, if before leaving the sidewalk she had failed to look and listen for the approach or presence of this auto-

mobile or other vehicles, it was negligence per se, and she could not recover if that fact contributed to her injury.

We understand from the cases referred to in the main opinion that a pedestrian has a right to use a street for the purpose of crossing it, provided in so using it he observes ordinary care for his safety, and that the mere fact of going into a street without first looking or listening, where there are vehicles and necessarily dangers, does not necessarily preclude him from a recovery of damages for injuries sustained while crossing. There was testimony in the case that plaintiff was some distance in the street when the conditions arose which led to her injury. Upon that testimony she did not receive her injury by stepping into danger as she left the curb, and was not in danger of injury from this automobile when she did so. To have told the jury that because she did not look and listen, or in other words, take precautions, before leaving the sidewalk, by observing movements of this automobile, which she could not have anticipated according to the testimony cited, she could not recover for her injury, would have been to ignore and prejudice other material issues.

The motion is overruled.